**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Stacy P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 21-cv-50229 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Carolyn Colvin | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Stacy P., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. The parties have filed cross motions for summary judgment [12], [17]. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On May 24, 2019, Stacy P. ("Plaintiff") filed for supplemental security income based on disability. R. 13. The application alleged a disability beginning on November 22, 2017. *Id*. The Social Security Administration ("Commissioner") denied her application on September 18, 2019, and upon reconsideration on February 27, 2020. *Id*. Plaintiff filed a written request for a hearing on March 16, 2020. *Id*. On December 1, 2020, a telephone hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared and testified. R. 34. Plaintiff was represented by counsel. R. 13. William Villa, an impartial vocational expert ("VE") also appeared and testified. *Id*.

On December 23, 2020, the ALJ issued her written opinion denying Plaintiff's claims for supplemental security income. R. 13-27. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [5]. Now before the Court are Plaintiff's motion for summary judgment [12], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [17], and Plaintiff's reply brief [20].

---

[1] Carolyn Colvin has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of May 24, 2019. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis; obesity; asthma; depression; anxiety; and cognitive disorder. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 16-17.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following exceptions: can have occasional exposure to unprotected heights, dangerous heavy moving machinery, and uneven surfaces; can have occasional exposure to dust, gases, odors, fumes, and pulmonary irritants; can understand, remember, and carry out simple routine instruction; can frequently interact with the general public and is able to deal with the structure of a work routine and adapt to ordinary changes. R. 18-25. At step four, the ALJ found that Plaintiff had no past relevant work. R. 25. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 25-26. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from May 24, 2019, through the date of decision, December 23, 2020. R. 26.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the

evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to properly engage in an analysis of listing 11.09: multiple sclerosis, (2) not properly accounting for Plaintiff's testimony regarding her limitations, and (3) improperly discounting the opinions of Plaintiff's treating physician. The Court finds that the ALJ's conclusion that Plaintiff's impairments did not meet or equal listing 11.09 was supported by substantial evidence and that the ALJ reasonably weighed the Plaintiff's testimony and the treating physician's opinions.

At step 3, an ALJ evaluates whether a claimant's impairments meet or equal any of the listings found in the regulations. 20 C.F.R. § 404.1520(a)(4). Listing 11.09 establishes the characteristics of multiple sclerosis. To meet the criteria of listing 11.09, a person must have multiple sclerosis, characterized by either:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>> 2. Interacting with others (see 11.00G3b(ii)); or
>> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § 404, Subpart P, Appendix 1. At step 3, the ALJ concluded that Plaintiff's multiple sclerosis did not satisfy the A criteria because she "has not exhibited that kind of extreme limitation of function due to multiple sclerosis." R. 16. Similarly, the ALJ concluded that Plaintiff's condition did not satisfy the B criteria because her functioning was not "'markedly' limited in any of" the listed areas due to multiple sclerosis. *Id*.

The Commissioner argues that Plaintiff has waived any challenge to the ALJ's analysis of the A criteria because Plaintiff focused the arguments in her opening brief on the B criteria. *See Malgorzata v. Kijakazi*, No. 20CV296, 2022 WL 2257122, at *3 (N.D. Ill. June 23, 2022) ("It is well established that arguments are waived if not raised in the opening brief."). It is true that Plaintiff did not explicitly mention the A criteria at any point in her opening brief. However, she did make the broad argument that the ALJ failed to properly engage in an analysis of listing 11.09. Although Plaintiff could have developed the argument further, Plaintiff's challenge to the ALJ's analysis of listing 11.09 provides sufficient context to have preserved the argument that the ALJ's consideration of both the A and the B criteria was cursory. Thus, the Court will not find that Plaintiff has waived the argument that the ALJ did not adequately consider the A criteria.

3

When discussing listing 11.09, the ALJ did not explain why Plaintiff's multiple sclerosis did not meet or equal either the A or B criteria. The Court finds that the ALJ's brief discussion of listing 11.09 was perfunctory. However, "an ALJ's step three analysis, even if cursory, does not warrant remand if the ALJ's decision otherwise fulsomely assesses a claimant's physical and mental limitations." *Theodoro K. v. Kijakazi*, No. 21CV4491, 2022 WL 17068121, at *3 (N.D. Ill. Nov. 17, 2022). This does not "give the ALJ's step-three determination new ground to stand upon," but "simply identifies the ALJ's step-three rationale for review." *Jeske*, 955 F.3d at 589.

In this case, although the ALJ did not analyze Plaintiff's mental limitations before concluding that Plaintiff's multiple sclerosis did not meet or equal the B criteria of listing 11.09, the ALJ did conduct a thorough evaluation of Plaintiff's mental impairments later in step 3 when addressing whether Plaintiff's mental impairments met other listings. The ALJ assessed Plaintiff's degree of limitation in each area of mental functioning, finding that Plaintiff had a mild limitation in understanding, remembering or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting or maintaining pace, and a mild limitation in adapting or managing herself. R. 16-17. The ALJ supported these findings with evidence from the record including Plaintiff's testimony, the results of neuropsychological testing, and the notes of treatment providers. *Id*. Therefore, the Court finds that substantial evidence supported the ALJ's conclusion that Plaintiff did not have a marked limitation in any of the four areas of mental functioning listed in section B of listing 11.09.

Additionally, when determining Plaintiff's residual functional capacity ("RFC"), the ALJ thoroughly analyzed Plaintiff's physical limitations, which allowed the ALJ sufficient information to have considered the A criteria of listing 11.09. The ALJ acknowledged that Plaintiff reported having balance problems and a feeling of pins and needles in her hands and feet. R. 18-19, 47-48, 50, 649. She also noted the treating physician's opinion that Plaintiff had balance problems and paresthesia in her hands.[2] R. 23, 647. However, the ALJ concluded that the treating physician's opinion about Plaintiff's "balance problems" was "vague and ambiguous." R. 24. Ultimately, the ALJ found that both Plaintiff's statements and the physician's opinions about the intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent with the medical evidence. R. 18, 24. As noted by the ALJ, Plaintiff's physical examination results consistently revealed that she had normal gait and stance, was able to tandem walk, and could perform Romberg tests without swaying.[3] R. 19-20, 24, 603, 610, 616, 650, 711. Tests also revealed that Plaintiff had normal power in all her extremities, had symmetrical normoactive reflexes, and could perform rapidly alternating movements in her upper extremities. R. 19-20, 561, 566, 602, 610. The ALJ also considered Plaintiff's self-reported ability to perform routine daily activities requiring fine and gross motor movements of the upper extremities, such as personal grooming, driving, washing dishes, and cooking. R. 22, 39-44.

To find that Plaintiff's multiple sclerosis met or equaled the A criteria of listing 11.09, the ALJ had to find that Plaintiff had an extreme limitation in her ability to stand up from a seated

---

[2] Paresthesia is a feeling of numbness/tingling. *See Frazier v. Barnhart*, No. 05CV1610, 2006 WL 3776378, at *3 (N.D. Ind. Dec. 1, 2006).
[3] A Romberg test is a "physical test used to determine whether a patient has balance problems related to proprioception – your body's ability to sense movements and position." *Tareski v. Kijakazi*, No. 22CV481, 2023 WL 4594488, at *6 n.8 (E.D. Wisc. July 18, 2023) (internal quotation marks and citation omitted).

4

position, balance while standing or walking, or use her upper extremities. An extreme limitation "means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use [the] upper extremities to independently initiate, sustain, and complete work-related activities." Listing 11.00(D)(2). Despite Plaintiff's reported balance problems, the medical record available to the ALJ contained no evidence that she required the "assistance of another person or the use of an assistive device" to stand or walk. Listing 11.00(D)(2)(a)-(b). *See* R. 221, 245 (Plaintiff self-reporting no use of an assistive device). The record also contained no medical evidence that Plaintiff had "a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits [her] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements." Listing 11.00(D)(2)(c). *See* R. 39-44 (Plaintiff describing daily activities including cooking, vacuuming, dishes, laundry, shopping, and daily grooming). Plaintiff did testify to having difficulty with small movements in her hands, affecting her ability to open jars and chop meat. R. 50. She testified that this was due to "not enough strength" in her arms or hands. R. 50. However, as noted by the ALJ, medical tests consistently noted that Plaintiff had "excellent power in all four extremities" and could perform rapidly alternating movements with her upper extremities. R. 19-20, 561, 566, 602, 610, 616, 650, 659, 715. Additionally, Plaintiff performed all aspects of personal grooming independently, drove every day, washed dishes, and did all the cooking for her family. R. 22, 44. Even if the ALJ fully credited Plaintiff's testimony about her difficulty with opening jars and chopping food, such testimony would not have supported a determination that Plaintiff had an extreme limitation in her use of her upper extremities. The medical evidence supported the ALJ's conclusion that, despite having some paresthesia in her hands, Plaintiff did not have an extreme limitation in her use of her upper extremities. R. 16, 25. *Cf. Busz v. Commissioner of Social Security*, No. 20CV00398, 2022 WL 354693, at *7 (N.D. Ind. Feb. 7, 2022) (finding that claimant who could not zip a zipper, open a jar, or grip and grasp objects did not carry his burden of showing that his condition satisfied the criteria of having an extreme limitation in use of upper extremities).

Plaintiff also contends that the ALJ improperly relied on Plaintiff's reported daily activities in determining that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence. An ALJ may properly consider a claimant's daily activities in reaching a credibility determination. 20 C.F.R. § 404.1529. Additionally, the ALJ supported the credibility determination, not only with Plaintiff's reported daily activities, but with medical evidence from the record, including consistently normal physical examination results. R. 19-21. Plaintiff has pointed to no evidence showing that the ALJ's conclusion was "patently wrong." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) ("An ALJ's credibility determination is entitled to deference, and we will overturn a credibility finding only if it is 'patently wrong.'").

Finally, Plaintiff argues that the ALJ improperly discounted the opinions of her treating physician, Dr. Rubin. The ALJ found the treating physician's opinions unpersuasive after considering that the physician did not support her opinions with a detailed explanation of her findings, that the opinions were vague, and that the opinions were inconsistent with the medical evidence and treatment notes. R. 24-25. The ALJ also noted that at least one of the physician's opinions was incomplete and missing multiple pages. R. 24. For these reasons, the ALJ reasonably concluded that the treating physician's opinions were unpersuasive. 20 C.F.R. § 404.1520c. *See Michelle D. v. Kijakazi*, No. 21CV1561, 2022 WL 972280, at *5 (N.D. Ill. July 30, 2024) ("In

sum, the regulation required the ALJ to articulate why she found [the] medical opinion unsupported and inconsistent with the record, and no more. *See* 20 C.F.R. § 404.1520c(b)(2). Because the ALJ did just that, she did not err in dismissing [the] opinion.").

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date:   December 23, 2024

ENTER:

*Margaret J. Schneider*
United States Magistrate Judge